THE EL RENO ELECTRIC LIGHT AND TELEPHONE COM-

PANY v. W. R. JENNISON.

1. DEFECTIVE MECHANIC'S LIEN—*Amendment.* The verification to a mechanic's lien which limits the declaration to the truth of the statement to the account for labor done and materials, fixtures and machinery furnished, as contained in the statement, is defective, but the mechanic's lien law authorizes the court, when actions are brought, to permit amendments to be made in furtherance of justice, and this amendment may be made and the defects cured on the trial of the case.

2. MECHANIC'S LIEN—*Description of the Property—Amendment.* Where property was described in a mechanic's lien as being lots 17 and 18, in block 103, in the Foreman addition to the city of El Reno, Canadian county, Oklahoma Territory, it is held that it was proper for the court, on the trial of the case a year afterwards, to permit an amendment showing that this was property of the same description in the city of El Reno, instead of Foreman's addition to the city of El Reno, it being found by the court that there was at that time no Foreman's addition to the city of El Reno, but that there was such property by a former plat, and that these lots in this block, by their later description, were the same property as were formerly platted by the first, and erroneous, description.

3. FINDINGS OF FACT CONSTRUED TOGETHER. Findings of fact made by a trial court must all be construed together to determine their sufficiency.

4. CONCLUSION OF LAW. A conclusion that the plaintiff is entitled to judgment against the defendant for the sum found due and the foreclosure of his lien upon property which is described, and to have the same sold to satisfy the judgment, is a sufficient conclusion of the trial court to support the judgment.

5. SUIT ON LIEN—*Part Due and Part Not Due.* Where demands due at separate times are included in a mechanic's lien and parts of the lien described were due at the time the action was brought, and part not due, the court may render judgment for the amount which was not due at the time the action was brought but subsequently fell due and was unpaid when the decree was rendered. The proper practice in such a case is for the plaintiff to sue only for the amount due, and then subsequently, when the other amount becomes due, to file a supplemental petition asking judgment therefor also. But where no objection was made to the form of the pleadings, it was not erroneous to render judgment on the petition for the entire amount, although part was not due when the petition was filed.

6. ACTION ON MECHANIC'S LIEN—*Prematurely Brought—Waiver of Objection.* While the law provides that the owner of property against which it is sought to establish a contractor's lien "shall not be liable to an action by such contractor until the expiration of sixty days" from the time of the completion of the work and the furnishing of materials, etc., yet if an action is brought within the sixty days and the owner, instead of promptly making objection by proper motion or plea, which can be determined before the merits of the action are tried, presents issues upon the merits of the case, included within his denial and counter-claim for damages, and proceeds to the trial of the case upon the merits, he cannot thereafter be heard to assert that the action was brought too soon.

7. VARIANCE. There is no objectionable variance in rendering a judgment for an amount due on contract and an amount also due upon a *quantum meruit,* where to the petition, which sues on the contract, there is attached an exhibit which shows that a part of the items exhibited were furnished outside of the contract. The defendant could have required an amendment to the petition and the setting up of the causes of action separately, had he desired, but having failed to object to the petition at the proper time, and having gone to trial without objection, and having made no objection to this defect on the trial, and the defect being one that could have been cured by amendment, it was waived.

## *Error from the District Court of Canadian County.*

Action by defendant in error, W. R. Jennison, against the El Reno Electric Light and Telephone company, and others as cross-petioners, to foreclose a mechanic's lien. Judgment was had for the plaintiff, from which defendant appeals. Affirmed.

*Blake & Blake,* for plaintiff in error.

*John I. Dille* and *John H. Burford,* for defendant in error.

The opinion of the court was delivered by

BIERER, J.: This action was brought by the plaintiff, W. R. Jennison, against the El Reno Electric Light and Telephone company, and others as cross-petitioners, to foreclose a mechanic's lien on lots 17 and 18, in block 103, in the city of El Reno, the lien being claimed for work and labor, and materials, machinery and appliances

which were placed by plaintiff on said premises for the Electric Light company. It appears that the contract was made on the 6th day of November, 1894; the machinery was in place and started on the 22d day of December, 1894, and the work completed on the 5th day of February, 1895. The plaintiff filed a mechanic's lien statement with the clerk of the district court of Canadian county on the 27th day of February, 1895, and another on the 11th day of March, 1895, and the action was commenced on the 21st day of March, 1895.

It is claimed by plaintiff in error that the verification to the first two statements for plaintiff's mechanic's lien were insufficient to create a lien on defendant's property. The mechanic's lien law of this territory is contained in art. 27, ch. 66 of the Statutes of 1893, commencing on page 870, and is a part of the code of civil procedure. A part of the second section of art. 27 of the mechanic's lien law provides:

"Any person claiming a lien as aforesaid shall file in the office of the clerk of the district court of the county in which the land is situated a statement setting forth the amount claimed and the items thereof as nearly as practicable, the name of the owner, the name of the contractor, the name of the claimant, and a description of the property subject to the lien, verified by affidavit."

Later on in this section it is provided that:

"Such statement shall be filed within four months after the date upon which material was last furnished or labor last performed," etc.

It is not claimed that these statements do not contain the name of the owner, the name of the contractor, the name of the claimant, and a description of the property subject to the lien. There is an objection to the manner of the statement of the description of the property, which will be hereafter noticed. The objection is to the

verification of the statement, and not to what is contained in the statement itself, excepting in one respect. The verification to the first statement filed is as follows:

"Territory of Oklahoma, } ss.
    Canadian County,

"W. R. Jennison, being sworn, says that he is the claimant and contractor above mentioned; that the above statement is just, true and correct account of the labor done and materials, fixtures and machinery furnished by him to the El Reno Electric Light and Telephole company under the contract with said company.

                                    "W. R. JENNISON.

"Subscribed and sworn to before me this 27th day of February, 1895.        B. F. HEGLER, Clerk,
                        "By E. M. HEGLER, Deputy."

The verification to the second statement is as follows:

"Territory of Oklahoma, } ss.
    Canadian County,

"W. R. Jennison, being sworn, says that he is the above named claimant for lien on the above named property; that he has read the foregoing statement of lien, knows the contents thereof, and that the same is a just, true and correct account of labor done and the machinery, fixtures and materials furnished by him to the said El Reno Electric Light and Telephone company.

                        "[Signed]    W. R. JENNISON.

"Subscribed and sworn to before me, this 11th day of March, 1895.        B. F. HEGLER, Clerk,
                        "By E. M. HEGLER, Deputy."

The claim is that these affidavits only verify the correctness of the account which is set out in these liens, and do not verify the name of the owner, the name of the contractor, the name of the claimant, the description of the property, and the items of the account, as the statute provides. We agree that the verifications are defective as to the name of the owner, the name of the

contractor, and the description of the property. The affidavit only states that the statement is a true and correct account of the labor done and the materials and machinery furnished. The ·statements, however, set up fully all the matters that are required to be set out to make either one a good mechanic's lien, and the defect is only in the fact that the language of the verification of these statements is too restricted. We think, however, that the defect was cured by the amendment to the mechanic's lien which was made during the trial of the case on February 27, 1896. The amendment, which was made by leave of court, cures all the defects in the first two statements. Counsel contend, however, that this amended lien cannot be considered in determining the defects in the original lien or liens, because it was made after the time for filing a mechanic's lien had expered. The fifth section of the mechanic's lien law provides:

"Any lien provided for by this act may be enforced by civil action in the district court of the county in which the land is situated, and such action shall be brought within one year from the time of the filing of said lien with the clerk of said court: *Provided*, That where a promissory note is given such action may be brought at any time within one year from the maturity of said note. The practice, pleading and proceedings in such action shall conform to the rules prescribed by the code of civil procedure as far as the same may be applicable; and in case of action brought, any lien statement may be amended by leave of court in furtherance of justice as pleadings may be in any matter, except as to the amount claimed."

Counsel contends that the language of this section authorizing the amendment of the lien by leave of court, gives no right to amend after the time for filing the lien has expired. Such a construction as that, we think,

would entirely defeat the purpose of the statute, which is a remedial one, and made for the purpose of affording an appropriate procedure to require a man who has gotten the benfit of another party's labor and material to pay for the same, and to give him an appropriate remedy against the very property that has gone to enrich the delinquent debtor, and would leave the statute in the same condition that it was in before this provision authorizing the amendment was incorporated into this mechanic's lein law in Kansas by the amendment in that state in 1889. If this provision authorizing amendments does not allow an amendment to be made after the time for filing the lien has expired, then it would just as well never have been written for it would hardly seem to us that it could be contended with any degree of force that a person could not do that, if this part of the statute were out of it. So long as a party's time for filing a mechanic's lien had not expired he could file as many statements in his effort to make a good lien as he chose, and certainly he could not be held to have exhausted his right by filing one or two or more imperfect statements. He might file half a dozen defective ones during that period, and then file one good and perfect one and recover on that, disregarding all of the others. But the trouble with the statute in its old form was that it gave no right to amend after the time had expired. This was a serious defect in the statute, and resulted in the defeat of meritorious claims for leins, upon purely technical grounds, and the statute was therefore changed and placed in the form in which the legislature of this territory adopted it. The language is "in case of action brought, any lien statement may be amended by leave of court in furtherance of justice as pleadings may be in any matter, except as to the amount claimed."

Section 139 of the code of civil procedure provides:

"The court may, before or after judgment, in further-ance of justice, and on such terms as may be proper, amend any pleading, process or proceeding," etc.

Now the language of the provision authorizing the amendment of a mechanic's lien is similar to that of this provision authorizing the amendment of pleadings, ex-cepting in the matter of a mechanic's lien the time is not fixed; but it does provide that any lien statement may be amended, and this may be done where an action has been brought by leave of the court, in futherance of justice, and "as pleadings may be in any matter." We hold the proper construction of this act to be that a mechanic's lien may be amended in any matter where, for similar reasons, a pleading could be amended, and at any time when a pleading could be amended, and may be done, where the justice of the cause would warrant it, either before or after judgment. The amendment was properly allowed, and cured all the defects in the original state-ments.

Counsel makes two objections to the description of the land in the original mechanic's lien, in the first two mechanic's lien statements. Both statements contained language claiming a lein on the building, and the "tract or piece of land appurtenant to said building," and the machinery and fixtures thereon located. We think, then, the claim is sufficiently made, at least to warrant the amendment which is made, that the lien is claimed on the land as well as on the building. An intention to claim a lien on the land as well as the building and fixtures is manifest from the instrument, and the language is suffi-cient to warrant the court in giving effect to this intention. In both of the original statements the land is described as lots 17 and 18, in block 103, in the Foreman addition

to the city of El Reno, while in the amended lien, which was filed during the trial, the land is decribed as lots 17 and 18, in block 103, in the city of El Reno, and the judgment declares a lein against the property by this latter description. The finding of the court in this respect is that there is no such property as lots 17 and 18, in block 103, in the Foreman addition to the city of El Reno, but that there was such property by a former platt filed by Foreman, and that the property which is now these lots in this block in the city of El Reno was formerly of a similar description, but in the Foreman addition to the city of El Reno. It can readily be seen how easy it would be for parties accustomed to the old description of this property to make this mistake, and how absolutely harmless such a mistake would be to this defendant. We think the court very properly permitted the amendment; in fact, it could not justifiably have done otherwise.

Counsel for defendant, on the trial of the case, asked the court to make special findings of fact and conclusions of law, which was done, and he now contends that the court made no finding that the plaintiff had a lien on the property against which the judgment was rendered. Counsel, in support of this contention, refer to finding number 5, which refers largely to the matter of the mechanic's lien, and specifically to the statement filed on February 27, 1895. This finding, taken by itself, would perhaps be defective, but the findings of fact of a court must be all taken together to determine their sufficiency; and the other findings taken with this do contain a finding of every material fact necessary to constitute the lien. The amendment made, too, on the trial, and which made the lien good, was specifically referred to in the

seventh section of the findings. This subdivision shows that the statement to the lien which was specifically found upon in the fifth section, was amended on the trial by making a verification thereto, and that an amendment was also made to conform to the property description of the real estate. Taken altogether, we hold the findings sufficient.

Counsel contends, also, that the trial court made no sufficient conclusion to support the judgment. We think this contention also untenable. Following the findings of fact the record shows this:

"Upon the foregoing special findings of fact the court makes the following conclusions of law:

"First. That the plaintiff is entitled to judgment against the El Reno Electric Light and Telephone company for the sum of nine hundred and forty dollars and ten cents, with seven per cent. interest thereon from April 1, 1895, and for a foreclosure of his lien upon lots 17 and 18, in block 103, in the city of El Reno, Canadian county, and to have said property sold to satisfy said judgment."

We think this is a sufficient conclusion that the plaintiff did have a mechanic's lien on this property. The language, while it might have been more direct and specific, could not mean anything else; and if the defendant desired any further or more specific conclusion it was his duty to have made the request on the trial of the case, when it could have been granted, (*Leonard v. Prescott*, [Kan.], 4 Pac. 172), instead of making it for the first time in this court when it can not be granted, at least without sending the case back for another trial, which would be a manifest injustice with no meritorious reason therefor.

It is also contended that the cause of action on the debt had not accrued at the time the action was brought

and therefore that judgment was erroneously entered. The plaintiff brought his suit to recover the sum of $1,072.10, with interest. He alleged that on November 6, 1894, he made a contract, which is set out in the petition, to furnish the machinery constituting the electric light plant for the sum of $1,959.85, payable $500 cash with order, $300 on delivery, $200 when completed, $500 in thirty days after starting the machinery and the balance in ninety days after the machinery is started; and that, in addition to the machinery and fixtures provided for in the original contract, he had furnished materials and done labor to an amount for which the court found he was entitled to $112.30. That only the sum of $1,000 had been paid on this contract, leaving the balance due. The petition also alleged that the machinery was started on the 22d day of December, 1894, so that on the face of the petition, and which is supported by the court's findings, the amount which the plaintiff recovered was all due, excepting the $459.85 which was due ninety days after the starting of the machinery, or two days after the suit was started. The court found for the plaintiff in the sum of $954.10, so that $494.25 of the amount sued for was due at the time the action was brought. The court, in its findings, found all the amount due the plaintiff because the defendant had filed no plea claiming the benefit of the fact that the $459.85 was not due at the time the action was brought, excepting a general denial; and it is strenuously contended by defendant in error that to take advantage of this fact defendant must have filed plea in abatement. While we are not ready to assent to the correctness of the reasoning of the trial court, or the argument of counsel for defendant in error, we think the conclusion of the court was correct. That the debt sued for is not due goes to

the merits of the action and the allegations of the plaintiff's petition that the debt is due was controverted by the general denial. (*Landis v. Morrissey*, [Cal.], 10 Pac. 258). But if the plaintiff had any cause of action that was due and unpaid at the time action was brought he had a right to bring his suit to enforce this cause of action and he could not be defeated because one or two or more causes of action were not due at the time the action was brought. Where a person has a lien on property, securing several different demands, or demands due at separately stated intervals, it is not necessary that he should wait to bring his suit until all become due. He may bring an action to foreclose the lien upon any default. The court, of course, at the time of rendering judgment, can not render judgment for more than is due at the time the judgment is rendered. (*King v. Longworth*, 7 Ohio, 519). But an installment falling due before the trial, although not due when the suit was brought, may be included in the decree. (*Manning v. McClurg*, 14 Wis. 350; *Howe v. Lemon*, 37 Mich. 164; *Hanford v. Robertson*, 47 Mich. 100; *Malcolm v. Allen*, 49 N. Y. 448; Jones on Mortgages, 1590-1591).

The authorities cited refer to mortgage cases, but of course there could be no difference in principle between such cases and the case of a mechanic's lien. The proper practice would have been for the plaintiff to have sued only for the amount due on this lien at the time the action was brought, and then to have filed a supplemental petition when the other became due; but no objection was made to the form of pleadings, and therefore those that the case was tried on were sufficient.

It is also contended that the judgment should be reversed because the action was prematurely brought,

49—v.

under a part of the third section of the mechanic's lien law referred to. The law which it is claimed has been violated is, "the risk of all payments made to the original contractor shall be upon such owner until the expiration of the sixty days hereinbefore specified; and no owner shall be liable to an action by such contractor until the expiration of said sixty days." The sixty days referred to is sixty days from the completion of the building or improvement, during which time, under the section of which the language given is a part, the sub-contract or may file his mechanic's lien. It is claimed that this law absolutely prevents any action against the defendant for sixty days after the completion of the improvement, and that as this action was brought on March 21, 1895, while the work done and material furnished were not completed until February 5, 1895, the action was premature. There can be no doubt but that this law does exempt the owner of the property from suit for sixty days. This is the period of time given for the sub-contractors to file their liens, and he is not required to settle with the contract until he may know, by the expiration of time, that no sub-contractor's lien will, or can, be filed. This is a provision of law, however, that the owner may or may not avail himself of, as he sees fit. It exempts him from the necessity of defending a suit, but he may, nevertheless, defend it; and if he does defend the suit on the merits he cannot thereafter be heard to say that he was not required, under the law, to make his defense when he did. The answer of the defendant not only denied liability to the plaintiff, but it also set up a counter-claim for damages in seven different specifications, amounting to a total of $1,310, and it asked, by reason of the damages sustained because of plaintiff's failure to perform his contract, that plaintiff

recover nothing by his suit, and the defendant recover its costs. In other words, it tendered to the court the issue that by reason of the damages which the defendant alleged it sustained because of the plaintiff's failure to perform his contract, and on account of the defective machinery furnished, and the imperfect way it was placed in the building, the damages sustained be held to entirely offset plaintiff's claim, and the lien be held discharged. The case appears to have gone to trial on these issues, and the court found part of defendant's claim for damages good, and allowed two of the specifications, one in the sum of $70, and the other in the sum of $62, amounting to a total of $132, and reduced plaintiff's claim by this amount. Can it then be heard to say that the action was. prematurely brought? Or that it was not in court at that time for the purpose of litigating the merits of the claim between it and the plaintiff? We think not. Such a holding would be unsupported by reason, trifling with justice, and making a play season of the important time of the courts of this territory.

This question, in principle, has been before the supreme court of Kansas several times. In the case of *Wells v. Patton*, [Kan.], 33 Pac. 15, it appears that Patton sued Wells and Morrison in Brown county, Kansas, to recover $3,300 for an alleged conspiracy. Morrison was served in Brown county, and Wells, who lived in Norton county, was served there. On Wells coming to Brown county to employ counsel and to prepare to defend the suit, he was again summoned in that county. He set up, in his answer, a plea to the jurisdiction of the court, and also to the merits of the case, and he claimed that a fraud was being practiced upon the jurisdiction of the court in serving him in the suit with Morrison, who was not a real or necessary party, but only brought into

the action in order to get jurisdiction of him, Wells, in Brown county. On the trial a verdict was rendered against Wells for $1,475, but found in favor of Morrison; and to the special questions submitted it was returned that Morrison made no false or fraudulent representations to the plaintiff, and that at the time Wells was served with process in Brown county he was in consultation with his attorney, and that at the time he was served with summons both in Norton and Brown county he resided in Norton county, and that when he came to Brown county he came to prepare to defend the suit, and for no other purpose. Concerning the claim that therefore no judgment could have been rendered in the trial court, and that the same should be reversed, the court said:

"Perhaps a defense to the merits may be united with a plea to the jurisdiction, but, if this is done, the trial court ought to settle the question of jurisdiction before proceeding to try the other issues in the case. If Wells had asked that to be done in this case, then we think we might say that he did not waive anything by answering even to the merits. But this was not done by him. In the case of *Christian v. Williams.* 35 Mo. App. 297, the answer contained a plea to the jurisdiction of the court, and also to the merits, but the question of jurisdiction was disposed of before proceeding to trial on the merits. The court in that case held such practice to be a good one. Such practice might be well adopted in this state. Of course, if the question of jurisdiction can be raised by motion or plea in abatement, that should be done. But if a fraudulent use of the process of the court, and its abuse, can only be ascertained upon an answer fully setting forth the facts, the court would have ample power to settle the question of jurisdiction upon a trial before a jury, prior to the proceeding to try the other issues of the case. It was said in *Meixell v. Kirkpatrick,*

29 Kan. 679: 'A party who denies the jurisdiction of the court over his person must first present this single question. He may not mingle with his plea to the jurisdiction other pleas which concede jurisdiction, and thereafter insist that there was error in overruling his plea to the jurisdiction. As heretofore stated, the defendant, by his demurrer, raised a number of questions other than those which were jurisdictional, and invoked the judgment of the court thereon. By such other pleas he submitted himself and his rights to the jurisdiction of the court, and can no longer be heard to say that it had no jurisdiction.'"

Now, we think the principle which controlled that decision also governs here, although the question there was one of jurisdiction over the person of the defendant, while here it was one pertaining to the proper time to bring an action. The principle governing the cases, however, is the same. The law exempted Wells from any necessity to appear to the action in Brown county. He chose, by the manner of the issue framed, to waive that objection. So in this case, the law exempted this company from any necessity to defend an action brought before the sixty days from the completion of the work had expired. It chose, however, by the issue which it framed, to waive that privilege, and having waived it in the trial court, it cannot now assert it here for a reversal of the judgment.

It is also claimed that there is a fatal variance between the petition and the judgment rendered, in that the petition alleges a cause of action against the defendant on the contract of November 6, while the court rendered judgment for the plaintiff for the balance due on this contract, and also for the amount of the extras furnished. While the petition does sue the defendant on this contract, and alleges the amount to be due under the

contract, there is attached to the petition an account of the items of material and machinery furnished and the labor performed by the plaintiff for the defendant, and this shows that part of the claim is for other articles and upon a different cause of action than that arising upon this contract. There is, in fact, alleged in this imperfect form, two causes of action in the petition, one on the contract and one on the *quantum meruit* for the articles furnished which were not provided for in the contract. The record shows no objection whatever to the petition in this form, either before or after pleading, or on the trial of the case. The defendant could have had these causes of action separately stated and numbered, if it had desired, and upon proper objection the plaintiff would have been required to amend his petition. As no objection was made, and as the defect could have been cured by amendment had the objection been made at the proper time, the case will now be considered as if the amendment had been made. (*Mulhall v. Mulhall*, 3 Okla. 304).

The judgment of the court below is affirmed.

All the Justices concurring.