JACOB DARST *et al.*

*v.*

OWEN A. THOMAS.

1. FRAUD—*in sale of property mortgaged.* Where A conveyed real estate to his ·brother, to enable him to raise money on the same and other land, and afterwards the brother reconveyed, subject to a deed of trust given by him, and he afterwards sold the other lands in the deed of trust to B and C, and at the trustee's sale of the premises B and C procured D, an irresponsible person, to make a sham bid on their part of the land, and then they bid off A's land, which, with the amount of D's bid, made $1750 more than the debt secured by

the trust deed, and B and C paid all of their bid to the incumbrancer, and D not paying his bid, they advanced the balance due the mortgagee and obtained a release for their land: *Held,* that A could recover back the sum out of which he was so defrauded, with interest, on bill against C and D. Having procured a false bid upon which others acted, they were bound to make it good. A, in such case, had his election to sue at law or in equity.

2. If one, by fraud, procures a sham bid on his property when offered for sale, by an irresponsible person, and thereby succeeds in having the land of another sold to pay off a portion of the debt he is equitably bound to pay, such injured party may recover back the sum so lost by him in the sale of his property, or the sum realized by the other, with interest.

3. CHANCERY—*finding.* Where the evidence is not preserved in a chancery suit, this court must assume the finding of the court below in the decree to be true.

APPEAL from the Circuit Court of Peoria county; the Hon. J. W. COCHRAN, Judge, presiding.

This was a bill in chancery, brought by Owen A. Thomas, as complainant, against Jacob Darst, Atkinson Horn, and others, as defendants. Pending the suit, Horn died, and his real estate descended to his sister, Rebecca Goldsborough, while his personal property passed to Nicholas Goldsborough, by Horn's will, and they were then made parties in the place of Horn, so deceased.

The facts on which the controversy rests, as found by the circuit court, are, in substance, as follows:

The said complainant, on the 10th day of November, A. D. 1866, was in the actual possession of, and was the legal and equitable owner of the east half of lot No. three (3), in Phelps and Bourland's subdivision of the west half and north-east quarter of the south-west quarter of section eight (8), township eight (8) north, range eight (8) east, of the 4th principal meridian, in said Peoria county, with the exception of an outstanding interest in one Austin J. Thomas, equal in value to one-tenth part thereof; that, at the same time, one Charles C. Thomas (a brother of complainant) was the owner of the west half of said lot three (3), and also of lot twelve (12), in block fifty-eight (58), in Ballance's addition to the city of

Peoria, in said Peoria county, and the said Charles, being desirous of making a large loan of money from Robert Patterson through Benjamin L. T. Bourland, agent for said Patterson, requested complainant to convey his said share of said lot three (3), meaning at that time the entire east half of said lot, to him, said Charles, and for his accommodation, (in order that he, said Charles, might include the same with the west half of said lot three (3) and said lot twelve (12) in a trust deed, required to be executed by said Charles to said Bourland before he, said Bourland, would consent to pay over to said Charles the money of said Patterson or make to said Charles said loan,) he, the said Charles, promising complainant, that immediately upon effecting said loan he would re-deed to complainant the premises conveyed to him for the purposes aforesaid, and that he would, moreover, secure and protect complainant against any and all loss and damage by the reason of the placing of said trust deed upon the said premises of complainant.

Complainant acceded to this request of Charles, and on a deed purporting to convey his interest in the whole of said lot 3 being presented to him by said Charles for his signature, he at once executed the same, without any consideration paid to him by said Charles, and for the accommodation, solely, of said Charles. Upon procuring from complainant the conveyance of the east half of said lot three (3), said Charles obtained from Bourland, as agent of Patterson, the loan of four thousand dollars ($4000), the money of said Patterson, to be repaid to Patterson, with ten per cent annual interest thereon, in five years thereafter, and to secure the same, he, Charles, executed to said Bourland, as trustee for said Patterson, a deed of trust upon said lot twelve (12), in Ballance's addition aforesaid, and upon the whole of said lot three (3). Complainant, after the making of said conveyance to said Charles, and the execution by said Charles of said trust deed, and until the sale under said trust deed, and as hereinafter mentioned, still continued in the actual and undisturbed possession of said east half of

said lot three (3), claiming to own the same, and receiving the rents and profits thereof to his own use; and Charles, on the 22d day of November, 1867, by way of compliance, on his part, with his agreement and promise to reconvey the same to complainant, did make to him, in a definite form, a reconveyance of all of said east half but five-eighths of an acre thereof, which the said Charles wrongfully and without the consent of complainant excepted in said deed, and against which exception complainant, in receiving said deed, objected and protested, claiming that, as against said Charles, he was entitled to a sufficient and full reconveyance of the whole east half of said lot.

For default on the part of said Charles in the payment of interest due upon said loan, said Bourland, as agent of said Patterson and trustee in said trust deed named, did afterwards, and in the lifetime of said Horn, (to-wit, on the 27th day of December, A. D. 1869, conformably to the terms of said trust deed, and after due notice given,) expose to sale, to the highest bidder for cash, at public vendue, the premises in said trust deed described, to pay and satisfy the entire amount of said mortgage debt, with interest and costs, first offering for sale said lot twelve (12), for which one David McKee, (a wholly irresponsible person, fraudulently and corruptly procured by said Atkinson Horn, in complicity with said Darst, to be present and bid off said lot at said sale,) bid the sum of thirty-five hundred dollars ($3500), there being other and responsible bids for said lot to nearly that amount, which said bid of said McKee being the highest bid for said lot, the same was struck off and sold to him at and for that price by said trustee, who then supposed him to be a *bona fide* and responsible purchaser of said lot.   To make up a balance of about the sum of $1150 still remaining of said debt and costs to be paid, after applying said $3500 in *pro tanto* discharge thereof, said trustee next offered the whole of said lot three (3), which was struck off and sold to said Darst and Horn for the sum of $3900.

Shortly prior to said sale, viz: on or about the 26th day of

226          DARST *et al. v.* THOMAS.          [Sept. T.

Statement of the case.

November, 1859, said Darst and Horn had become and then were the owners, by purchase from said Charles C. Thomas, of his equity of redemption in said lot twelve (12) and the west half of said lot three (3), and that upon said sale to them by said Bourland of said lot three (3), they paid over to him the full amount of said $3900 so bid by them for said lot, to be applied on said mortgage debt and costs, and received a deed from said Bourland as such trustee therefor. Said trustee failing to get from said McKee the amount of his said bid, or any part thereof, and finding said McKee to be pecuniarily irresponsible and worthless, applied upon said debts and costs, and paid over to said Patterson the entire amount of said $3900 so paid by said Darst and Horn upon the purchase of said lot three (3); and afterwards, upon the payment to him, by said Darst and Horn, of the balance still remaining due and unpaid upon said debt and costs after applying said $3900 thereon, he, said Bourland, as such trustee, did, at the instance of said Darst and Horn, execute and deliver to them a full and complete release and discharge of said lot twelve (12) from the lien of said debt and said trust deed.

Lot twelve (12) and the west half of said lot three (3) were, at the time of said sale under said trust deed, of value much more than sufficient to satisfy said mortgage debt, and all proper costs and charges attending such sale and the execution of said trust, and that the same ought to have been sold and applied in full, or so far as necessary to the payment and discharge thereof, before the sale of the east half of said lot three (3), and the application of its proceeds, or any part thereof, to that use. The actings and doings of Darst and Horn in procuring for their own benefit the exemption of said lot twelve (12) from sale, and preventing the proceeds thereof from being first applied in liquidation of said debt and costs, were and are grossly in fraud of complainant and his rights in the premises.

The fair cash value of said lot twelve (12), at the time of said trustee's sale, was the sum of $3500, and of the whole of

said lot three (3) the sum of $3900, and the value, in cash, of the east half of said lot three (3), at said time, was the sum of $1950.

The circuit court decreed that said complainant do have and recover of and from said defendants, Jacob Darst, Nicholas and Rebecca Goldsborough, the sum of two thousand four hundred and twenty-seven dollars and fifteen cents ($2427.15), the same being the amount of said sum of $1755, with interest thereon, at the rate of six per cent per annum, from the 27th day of December, 1869 (the date of said trustee's sale), to the date of this decree, and, in default of payment thereof within thirty days, that execution issue therefor in favor of said complainant, and against said defendants Darst and Nicholas and Rebecca Goldsborough, the same to be levied generally of the goods and chattels, lands and tenements of said Darst, and of the moneys and personal property of the said Nicholas in the hands of his guardian, derived, as aforesaid, from the estate of the said Atkinson Horn, deceased, under and pursuant to said will, and of and from the lands and tenements of said Rebecca Goldsborough, or the proceeds thereof, which have so come to her as aforesaid, as heir-at-law of said deceased.

Mr. JULIUS S. STARR, and Mr. D. McCULLOCH, for the appellants.

Mr. J. K. COOPER, and Mr. CHARLES FEINSE, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

It is objected to this decree, that it gives compensation in money instead of simply enforcing the equity of appellee to have the sales set aside, and to have the property sold, selling lot 12 first, the west half of lot 3 next, and the east half last. Solicitors for appellants say these were the original equities of appellee, and the court can not properly give him more.

We see no objection to the decree in this regard. By the fraud of Darst and Horn the appellee has been placed in a

228          DARST *et al. v.* THOMAS.          [Sept. T.

Opinion of the Court.

condition where he can not so readily assert what are called his original equities. The possession of the east half of lot 3 is taken from him, and the price of lot 12 is paid over to the non-resident mortgagee. Although it may be that appellee might have followed the course suggested, he is not confined to that remedy. The sham bid of McKee was procured by Darst and Horn. On the faith of it, lot 3 was sold at $3900, and gave appellee an equitable right to $1750 out of the surplus of that bid over the amount apparently left unpaid of the mortgage debt, after deducting the price of lot 12. Others having acted on the faith of that sham bid, Darst and Horn were bound, as its authors, to make it good. This they failed to do. By that failure, and by their connivance, appellee was deprived of that sum of money, and Darst and Horn, as the owners of lot 12, got the full benefit of that much money, which ought to have been paid to appellee. It is but right that they should refund it, with interest. The loss was the fruit of their fraud—they must respond.

Horn having died, it is right and proper that his property in the hands of his heir and devisee should be subjected to the same burden which the decree would have imposed upon Horn, if living.

The cause of complaint rests upon the fraud of Darst and Horn, and appellee had his election to proceed at law or in equity. He was not confined to his remedy at law, as suggested by counsel.

It is complained that $1750 is more than the value of appellee's interest in the land. From the findings it seems no more than just.

We can not consider the objection that the findings of the court are not supported by the proofs, for the evidence is not preserved in the record. We must assume that the findings are true.

We find no sufficient cause to disturb the decree of the circuit court.

*Decree affirmed.*